UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

INTERNATIONAL SOURCING &
MARKETING,
Plaintiff

06 74 ML

v. C.A. No. 06-_______

RED BOARD LTD., and
SAMETIME HOLDINGS,
LTD.,
Defendants

## COMPLAINT

**I. INTRODUCTION.** This breach of contract action is commenced solely as a precautionary measure, in the event that the above-captioned plaintiff's December 2005 Demand for Arbitration of a dispute arising out of a June 19, 2004, agreement (the Agreement") is stayed due to a Petition to Stay Arbitration, filed by the above-captioned defendants in January 2006 in the Supreme Court of the State of New York. Plaintiff objects to said Petition to Stay Arbitration. By filing the within action, plaintiff in no manner, implicitly or actually, waives its right to arbitrate the Agreement. *In re Ballard Shipping Co.*, 752 F. Supp. 546, 549 (D. R. I. 1990)(Plaintiff's mere filing of complaint does not constitute a waiver), *citing Hilti Inc. v. Oldach,* 392 F.2d 368, 371-372 (1st Cir. 1968)(Defendant corporation's filing answer on the merits to plaintiff's complaint and delay of two years prior to its demand for arbitration not "strong enough to justify waiver or default in light of the vigorous policy favoring arbitration.").

**II. THE PARTIES**

1. Plaintiff International Sourcing & Marketing, Inc. ("ISM") is a Rhode Island corporation with its principal place of business located at 940 Waterman Avenue, East

Providence, Rhode Island 02914 ("ISM"). ISM is in the business of locating, or sourcing, manufacturers and suppliers of electronics components, and selling or reselling their products to customers. ISM also provides logistics services to said manufacturers and suppliers, including shipment coordination, vendor managed inventory programs, marketing and collection initiatives.

2. Defendant Red Board Ltd. ("Red Board") is a Hong Kong corporation with manufacturing facilities located in mainland China. Red Board's business entails the manufacturing of printed circuit boards.

3. Defendant Sametime Holdings, Ltd. ("Sametime"), a Bermuda holding corporation, is the parent corporation of Red Board. Sametime's principal place of business is located in Hong Kong.

**III. JURISDICTION AND VENUE**

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between ISM, a citizen of the United States, and Defendants, citizens of Hong Kong and Bermuda.

5. This Court possesses specific personal jurisdiction over Defendants in that the actions leading up to ISM's claim directly arise out of or relate to Defendants' activities in Rhode Island.

6. This Court possesses general personal jurisdiction over Defendants as Defendants' contacts with Rhode Island are continuous and systematic.

7. Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claim occurred in Rhode

Island; and/or a substantial part of property that is the subject of the action is situated; and/or Defendants are subject to personal jurisdiction at the time of commencement of this action; and/or Defendants reside in Rhode Island at the time of commencement of the action.

**III. FACTS**

8. At all relevant times herein, ISM served as Red Board's exclusive sales representative in the geographic regions of Europe, North America, South America, and the Philippines. ISM also was the exclusive, worldwide sales representative for several mutually agreed upon customers.

9. ISM has served as Red Board's sales representative for seven years.

10. On June 20, 2002, the parties entered into a Sales Representative Agreement (the "Sales Representative Agreement") giving ISM, among other things, exclusive rights to sell products manufactured by Defendants.

11. At all relevant times herein, ISM was, and remains, a Sametime shareholder.

12. On June 19, 2004, ISM and Defendants entered into the Agreement. A true copy of the June 19, 2004 Agreement is attached as Exhibit A. On the same date, June 19, 2004, the parties entered into an Amendment to the Sales Representative Agreement (the "Amendment").

13. The Agreement was the product of extensive negotiations that took place in Rhode Island, Hong Kong, and mainland China.

14. The Agreement is governed by the laws of the State of New York.

15. The Agreement arose from, among other things, Defendants' operational deficiencies and management instability, including but not limited to previous criminal

charges that had been lodged against Red Board and/or its officers, and the related interruption of its business operations, and Defendants' expressed intention to summarily remove the entire Red Board management team.

16. The Agreement contains certain "trigger events" the occurrence of any of which would severely impact ISM's business, expose ISM to serious long term financial consequences, and entitle ISM to specified damages.

17. The trigger events are defined by the Guarantee Agreement as follows:

> (a) Customer delivery requirements fail to be met as a direct or indirect result of [Defendants'] business operations being closed, suspended or restricted by action of any Chinese court, government or regulatory agency, authority, entity or instrumentality (collectively, "Chinese Governmental Entity"); or
>
> (b) Customer delivery requirements fail to be met as the direct or indirect result of (i) the failure of [Defendants] to secure necessary licenses or permits, (ii) the failure of Principal to be in compliance with any order, regulation, or law of any Chinese Governmental Entity; or (iii) the imposition of restrictions on the importation of raw materials into China and/or the exportation of Products out of China.
>
> (c) Management instability directly or indirectly results in any one of the following events which will have a severe impact on ISM business:
>
>> (i) Disqualification or reduction in orders by any ISM customers which represent over 10% of the total ISM sales, or
>>
>> (ii) Loss or suspension of any key industry certification including ISO 9000, ISO 14001, or QS9000, or
>>
>> (iii) Net factory production output is reduced below 2.4 million square feet for any calendar quarter.

18. Section 1 of the Agreement further provides that upon the occurrence of any Trigger Event and the receipt by Red Board of written notice thereof from ISM, Red Board shall pay to ISM an amount equal to the aggregate sum of commissions earned by ISM during the twelve-month period immediately preceding the date of the occurrence of such

Trigger Event. These damages were designed by the parties to compensate ISM for actual damages.

19. In or about September 2004, Red Board's factory was closed by a Chinese Governmental Entity. Shortly thereafter, Maurice Yip, Red Board's Chief Executive Officer and Sametime shareholder and, upon information and belief, member of its Board of Directors, was incarcerated for approximately six months. At or around the same time, Red Board senior officer and Sametime shareholder and board member Sammy Yip fled China for an extended period. Significant fines also were levied on Red Board by a Chinese Governmental Entity following the factory's closure due to regulatory and/or permitting violations.

20. Additionally, Red Board failed to renew the contracts of its entire operational management team – Cy Ng, Quality Director; David Yau, General Manager; and Yi Nan Wang, Marketing Manager – then failed to make appropriate or adequate plans for their replacement.

21. These problems have resulted in serious deterioration in the quality and quantity of product output, unauthorized process changes, and unilateral extensions of the time required to complete customer orders (so called, "lead times"). A planned factory expansion also was delayed. Further, as a result of these pervasive problems, ISM customers have rejected product batches and conducted factory quality audits. ISM has lost orders and the business of its customers. Further, Defendants' actions have impaired ISM's good name, goodwill, and reputation in the electronics industry.

22. These regulatory violations, fines, management instability, deterioration in quality and quantity of product output, and unauthorized process changes have resulted in four

distinct Trigger Events: Customer delivery requirements have failed to be met due to both (i) the factory being closed by a Chinese Governmental Entity, and (ii) the failure to obtain necessary permits and to be in compliance with the regulatory requirements of a Chinese Governmental Entity. Additionally, the abrupt incarceration, termination, and/or disappearance of top Red Board management (iii) has resulted in disqualification or reduction in orders by ISM's customers representing over 10% of ISM's total sales and (iv) net factory production output was reduced below 2.4 million square feet for at least three consecutive quarters.

23. Red Board's violations of the Agreement further resulted in the delay of Red Board's planned factory expansion and new factory construction, and forced ISM to delay sales activities and growth plans.

24. Notice of these Trigger Events and demand for payment under the Agreement was given to Defendants by letter dated November 11, 2005.

25. Defendants have failed and refused to honor their obligations under the Agreement.

26. The total value of commissions earned during the twelve month period immediately preceding each Trigger Event is not less than approximately $1,795,000. Accordingly, pursuant to Section (1) of the Agreement, Red Board must pay ISM an amount not less than $7,180,000. Red Board has failed to pay ISM $7,180,000, or any other amount pursuant to Section 1 of the Agreement, despite notice and demand by ISM.

**COUNT I.**
**(Breach of Contract)**

27. ISM incorporates by reference paragraphs 1 through 26 of the within Complaint.

28. Defendants' actions as described herein constitute breach of contract.

29. ISM has suffered damages thereby.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, International Sourcing & Marketing, respectfully requests the following relief:

A. Judgment against the Red Board Ltd. and Sametime Holdings, Ltd., for compensatory damages, interest, costs, and attorneys' fees; and

B. Such other legal or equitable relief that the court deems necessary and proper.

Respectfully submitted,

INTERNATIONAL SOURCING &
MARKETING,
By Its Attorneys,

Catherine A. Sammartino
R.I. Bar No. 4754
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175 fax

Andrew Berg
R. I. Bar No. 4762
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175 fax

**Jury Trial Demand**

Plaintiff hereby demands trial by jury on all issues triable by right to a jury.

Dated: 2/15/06